IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-01695-DME-MEH

PEDRO NIVAL,

       Plaintiff,

v.

DR. JERE SUTTON, CCCF HMO Provider,
JUDY BREZENDINE, CCCF Clinical Services Director,
LYNN THOMPSON, CCCF Nurse Practitioner,
JANE DOE #1 (SANDY), JANE DOE #2 (MARY), and JANE DOE #3 (CHRISTIE), NURSING
STAFF, all in their official and individual capacities,

       Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

       Before the Court are Defendant Jere Sutton's Motion for Summary Judgment [filed August

17, 2012; docket #93] and the CCCF Defendants' Motion for Summary Judgment [filed August 17,

2012; docket #94].   In accordance with 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the

matters were referred to this Court for recommendation.   The motions are fully briefed, and oral

argument would not materially assist the Court in its adjudication of the motions.   Based on the

record contained herein, the Court recommends the Defendants' motions be **granted**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file
any written objections in order to obtain reconsideration by the District Judge to whom this case is
assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings
or recommendations to which the objections are being made.  The District Court need not consider
frivolous, conclusive or general objections.  A party's failure to file such written objections to
proposed findings and recommendations contained in this report may bar the party from a de novo
determination by the District Judge of the proposed findings and recommendations. *United States
v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file

## I.    Findings of Fact

The Court finds the following facts viewed in the light most favorable to the Plaintiff,[2] who is the non-moving party in this matter.  The facts noted here constitute only those necessary for the Court's analysis of the arguments raised in the present motions.

1.    Plaintiff, Pedro Nival, is a Colorado inmate incarcerated at Crowley County Correctional Facility ("CCCF").  [Amended Complaint, ¶ 1, docket #37 at 2.]

2.    Plaintiff became incarcerated at CCCF on or about June 13, 2005.  [Deposition of Pedro Nival, June 22, 2012 ("Nival depo") at 18: 4-5, docket #94-1.]

3.    Plaintiff suffered from pain in his feet beginning in the fall 2007.  [*Id.* at 17: 3-11.]

4.    Plaintiff first reported the pain in his feet to prison officials in March 2008.  [*Id.* at 17: 1-2.]

5.    Plaintiff began receiving treatment from prison medical personnel for his foot pain in July 2008.  [*Id.* at 28: 21.]

6.    X-rays of the Plaintiff's feet revealed no spur or other bone abnormality.  [*See*

---

written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

[2]Typically, in the summary judgment context, a pro se litigant's verified complaint may be treated as an affidavit as long as it satisfies the standards for affidavits outlined in Rule 56.  *See Adams v. Dyer,* 223 F. App'x 757, 764 (10th Cir. 2007) (citing *Conaway v. Smith,* 853 F.2d 789, 792 (10th Cir. 1988)).  However, here, the Court notes that, while the operative pleading contains a section for execution of a declaration under penalty of perjury, the Plaintiff did not execute the declaration.  *See* docket #37 at 8.  Therefore, the Court will not construe the Amended Complaint as a declaration or affidavit pursuant to Fed. R. Civ. P. 56(c)(4).
Further, the Court notes that certain allegations in the Amended Complaint refer to, or contain citations to, other documents, copies of which are not attached to the Amended Complaint and, to the Court's knowledge, do not appear on the record and have not been provided to the Court.

Medical Record, August 6, 2008, docket #94-2.]

7.      Defendant Judy Brezendine did not personally treat Plaintiff for issues with his feet. [Nival depo, 120: 25; 21: 1-17.]

8.      Defendant Jere Sutton is a physician who provided care to the Plaintiff at the CCCF. Dr. Sutton provided medical care in that prison until October 2009, at which time he ceased work there.  [*Id.* at 37:10-25; 38: 1-7.]

9.      Defendant Lynn Thompson is a nurse practitioner who sees and treats the Plaintiff regularly.  [*Id.* at 122: 11-24.]

10.     Defendant Sandy Vasquez is a nurse who saw and treated Plaintiff when he first began complaining of foot pain.  However, Defendant Vasquez has not seen, evaluated or treated Plaintiff for some time.  [*Id.* at 124: 1-17.]

11.     Defendant Christie Rusher is a nurse who began evaluating and treating Plaintiff after Defendant Vasquez stopped treating him.  [*Id.* at 124: 9-14.]

12.     Plaintiff cannot state with certainty whether Defendant Mary Cardanes is a proper Defendant in this case, as there are two nurses named Mary, and Plaintiff is unsure if he was treated by Mary Cardanes.  [*Id.* at 123: 3-14].

13.     Plaintiff received various medical treatments from each Defendant nurse except Defendant Brezendine and, possibly, Defendant Cardanes.  [*Id.* at 124: 18-23.]

14.     Plaintiff did not have a problem with the treatment provided by the Defendant nurses. [*Id.* at 126: 2-5.]

15.     Plaintiff does not assign individual blame to any of these Defendant nurses or Defendant Brezendine for his alleged injuries or increased foot pain, but he believes it was the

collective responsibility of the Defendants to provide him effective treatment.  [*Id.* at 127: 5-20.]

16.     Plaintiff missed at least seventeen (17) nurse sick call appointments during which he would have had the opportunity to receive treatment or evaluation for pain and discomfort.  [*Id.* at 136: 14-24.]

17.     Plaintiff understands that neither the nursing staff nor Defendant Brezendine could provide him with orthotic or specialized medical shoes.  [*Id.* at 129: 23-35; 130: 1.]

18.     Plaintiff understands that the nursing staff neither have the authority to order or refer outside consultations nor are directly responsible for outside consultations or other consultations. [*Id.* at 128: 25; 129: 1-22.]

19.     Medical personnel advised Plaintiff to lose weight to help alleviate pain in his feet. [*Id.* at 84: 23-25; 85: 1-6.]

20.     Plaintiff did not lose weight, telling medical personnel he was "just not that motivated to lose weight right now."  [*Id.* at 117: 18-25; 118, 1-6.]

21.     Plaintiff has refused to attend seminars aimed at improving the overall health of diabetics including care for feet, saying he has "already attended them."  [*Id.* at 140: 21-25; 141: 1-5.]

22.     By filing this lawsuit, Plaintiff shows that he disagrees with the medical treatment he received at CCCF.  [*Id.* at 144: 23-25.]

23.     Plaintiff has not consulted another medical professional to determine whether his pain would be less had he been given adequate care.  [*Id.* at 58: 21-25; 59: 1-4.]

24.     Plaintiff complains about the care provided by Dr. Sutton between July 2008 and July 2009.  [Nival Depo, 32: 8-25; 33: 1-6.]

25.     On August 6, 2008, Plaintiff was seen by Nurse Practitioner (NP) David Miller who evaluated the Plaintiff's hip and complaints of pain in the feet. [Ambulatory Health Record, August 6, 2008, docket #93-3.]

26.     NP Miller reviewed x-rays of the Plaintiff's feet and saw no abnormality. [*Id.*]

27.     NP Miller instructed the Plaintiff to ice his plantar fascia three times a day and take Naprosyn for pain. [*Id.*]

28.     NP Miller encouraged the Plaintiff to lose weight to alleviate the condition. [*Id.*]

29.     The Plaintiff saw Dr. Sutton for a physical examination on August 8, 2008. [Physical Examination Record, August 8, 2008, docket #93-2.]

30.     Plaintiff was seen by Nurse Johnson on August 26, 2008 at which time he complained of hip and foot pain and asked for a mattress, different shoes and a mouth guard. [Ambulatory Health Record, August 26, 2008, docket #93-4.]

31.     NP Miller saw the Plaintiff two days later on August 28, 2008 to administer a cortisone injection to Plaintiff's hip. There is no mention of Plaintiff's feet in the record. [Ambulatory Health Record, August 28, 2008, docket #93-5.]

32.     On September 26, 2008, Plaintiff saw Nurse Johnson again and reported that the Naprosyn was not helping very much, but some relief was achieved when taken with Tylenol. [Ambulatory Health Record, September 26, 2008, docket #93-6.] Nurse Johnson requested a renewal of the Naprosyn prescription, entered an order allowing the Plaintiff to ice his feet in the treatment area, and instructed the Plaintiff on stretches he could perform to alleviate the pain. [*Id.*]

33.     Plaintiff saw Nurse Johnson again on October 10, 2008, at which time Plaintiff reported that the medications and the stretches helped. [Ambulatory Health Record, October 10,

2008, docket #93-7.]

34.     The Plaintiff saw NP Miller on November 6, 2008 and reported that he no longer had hip pain, but still complained of foot pain.  [Ambulatory Health Record, November 6, 2008, docket #93-8.]  Plaintiff told NP Miller that while he knew he must lose weight, he was "just not motivated."  [*Id.*]  NP Miller scheduled a cortisone injection for two weeks later.  [*Id.*]

35.     NP Miller performed a cortisone injection on the Plaintiff's left foot on December 4, 2008.  [Ambulatory Health Record, December 4, 2008, docket #93-9.]

36.     On January 2, 2009, the Plaintiff saw Nurse Johnson, reported that the cortisone injection for his left foot helped, and asked about an injection for his right foot.  [Ambulatory Health Record, January 2, 2009, docket #93-10.]  Plaintiff's request was put to Dr. Cabling for review.  [*Id.*]

37.     The cortisone injection for Plaintiff's right foot was approved by Dr. Cabling and scheduled. [Ambulatory Health Record, January 5, 2009, docket #93-11.]

38.     Plaintiff saw Dr. Sutton on February 10, 2009, reported that the injection in his right foot provided him with relief, and asked for another injection in his left foot. [Ambulatory Health Record, February 10, 2009, docket #93-12.]  Dr. Sutton examined the foot, found that the reports of pain were now in the forefoot, but found little tenderness when the foot was palpated.  [*Id.*]  Dr. Sutton determined that the injection was not "medically indicated."  [*Id.*]

39.     Plaintiff believes that he should have received "a remedy of some sort" from Dr. Sutton.  [Nival depo at 83: 14-25; 84:1.]

40.     Plaintiff saw Dr. Cabling on March 25, 2009 at which time Plaintiff received a check-up and counseling about coming into medical compliance with diet, exercise and weight reduction.  [Ambulatory Health Record, March 25, 2009, docket #93-13.]

41.      On April 14, 2009, the Plaintiff saw Nurse Johnson and reported constant pain in his feet, but noted that the stretches were helping some.  [Ambulatory Health Record, April 15, 2009, docket #93-14.]

42.      One week later, on April 21, 2009, Plaintiff complained about not receiving the second injection in his left foot and reported that the stretches were only partially effective. [Ambulatory Health Record, April 21, 2009, docket #93-15.]

43.      The Plaintiff saw Dr. Sutton on June 16, 2009, at which time he complained of pain in his right hip and both feet. [Ambulatory Health Record, June 16, 2009, docket #93-16.]  Noting a loss of longitudinal arch in the feet, Dr. Sutton entered an order for the Plaintiff to be seen by Abilities Unlimited, a provider of medical equipment outside of the prison system.  [*Id.*]

44.      Dr. Sutton requested the outside consultation so that Plaintiff could be provided with "lower extremity orthoses." [Physician Health Partners Referral form, June 18, 2009, docket #93-17.]  However, Physician Health Partners denied Dr. Sutton's request to obtain medical devices for the Plaintiff.  [*Id.*]

45.      Plaintiff agrees that the request for an outside consultation for orthopedic footwear was not denied by Dr. Sutton.  [Nival depo. at 67:23 through 71:2.]

46.      Dr. Sutton saw the Plaintiff again on July 28, 2009, at which time they discussed the denial of Dr. Sutton's request for Plaintiff's fitting of custom orthotics. [Ambulatory Health Record, July 29, 2009, docket #93-18.] Dr. Sutton reports that, during the visit, he offered to address Plaintiff's foot pain with an injection. [*Id.*]  Plaintiff identified the location of the pain in his foot where the injection should occur, but then pointed to another location. Dr. Sutton asked for clarification that the second location was actually where Plaintiff wanted the injection.  [*Id.*]

Plaintiff became upset and told Dr. Sutton that he did not trust him and did not want an injection after all.  [*Id.*]

47.     On September 22, 2009, Dr. Sutton saw the Plaintiff for complaints of pain in his right hip.  [Ambulatory Health Record, September 22, 2009, docket #93-19.]  Dr. Sutton reports that xrays showed no boney abnormalities, ordered a prescription for the Plaintiff's pain, and scheduled a follow-up appointment.  [*Id.*]

48.     Dr. Sutton no longer worked at the Crowley facility after October 2009.  [Nival depo at 37:15-19.

49.     On December 15, 2009, the Plaintiff saw NP Lynne Thompson for continued foot pain. [Ambulatory Health Record, December 15, 2009, docket #93-20.]  NP Thompson ordered a course of Neurontin to address the Plaintiff's foot pain.  [*Id.*]

50.     One month later, on January 12, 2010, NP Thompson noted regarding Plaintiff, "Discuss [with] IM [inmate] that he will need to start taking Neurontin or it will be [discontinued] in 30 days." [Ambulatory Health Record, January 12, 2010, docket #93-21.]

51.     Three days later, Plaintiff complained to Nurse Vasquez that he wanted to see a podiatrist. [Ambulatory Health Record, January 15, 2010, docket #93-22.]  Nurse Vasquez reports that Plaintiff told her he had not started taking the Neurontin, but agreed to start taking it. [*Id.*]

52.     On October 20, 2010, the Plaintiff underwent a diabetic foot assessment and was recommended for bilateral arch supports available from the facility's canteen store.  [Ambulatory Health Record, October 20, 2010, docket #93-23.]  Plaintiff responded that he had obtained these previously but said they were not effective.  [*Id.*]

53.     On August 12, 2010, Anthony DeCesaro, CDOC Grievance Officer, wrote to the

Plaintiff informing him that he had not exhausted all of the administrative remedies available to the Plaintiff under the grievance process for Grievance #C-CC09/100-284. [August 12, 2010 letter from Anthony DeCesaro to Pedro Nival, docket #93-24.]

54.     Even though Plaintiff received the August 12, 2010 letter telling him that he had failed to exhaust his administrative remedies, Plaintiff elected not to take any steps to complete the process.  [Nival depo at100:18-25;101: 1-20.]

## II.     Procedural History

Plaintiff initiated this action *pro se* on June 29, 2011, asserting nine claims against six named defendants.  (Docket #1.)  Magistrate Judge Shaffer reviewed the original complaint and ordered Plaintiff to file an amended complaint on or before August 5, 2011.  (Docket #13.)  After receiving two extensions of time [dockets ##23, 24], Plaintiff filed a first amended complaint on December 29, 2011, adding a plaintiff (Aurora Nival) and several additional defendants.  (Docket #27.)   On January 10, 2012, Judge Babcock issued an order dismissing the additional plaintiff as well as several claims and defendants.  (Docket #28.)  Although Judge Babcock did not grant Plaintiff leave to amend, Plaintiff attempted to conform his pleadings to Judge Babcock's order by submitting a Second Amended Complaint on February 7, 2012.   (Docket #37.)    In particular, Plaintiff represented that the Second Amended Complaint "[was] edited and it excludes the dismissed defendants per Order of the Court...[and] no other significant changes were made ... ."  (Docket #37 at 1.)  The Clerk of the Court correctly designated the document as tendered.  Upon motion by Defendant Sutton, the Court entered an order directing the Clerk of the Court to accept Plaintiff's Second Amended Complaint [docket #37] as filed.  (Docket #65.)  Accordingly, the Plaintiff's Second Amended Complaint (hereinafter "Amended Complaint") is the operative pleading in this

case.

Plaintiff's Amended Complaint asserts four causes of action against Defendants Sutton, Brezendine, and Thompson, as well as against three nurses identified only by their first names. (Docket #37.) Plaintiff alleges that Defendants, acting in various capacities, violated his Eighth and Fourteenth Amendment rights by denying him access to sufficient medical treatment for an apparent foot condition.  (*Id*. at 3-7.)  Plaintiff seeks compensatory and punitive damages, as well as injunctive relief in the form of "a diagnosis by a professional/specialist in the field of podiatry that will be recognized as (sic) a Certificate of Review, and authorization/approval to pursue treatment/care as proscribed (sic) by that professional."  (Docket #37 at 7.)

Defendants Judy Brezendine, Lynn Thompson, Sandy Vasquez (Jane Doe #1 "Sandy"), Mary Cardanes (Jane Doe #2 "Mary"), and Christi Rusher (Jane Doe #3 "Christie) (collectively the "CCCF Defendants") filed one of the present motions for summary judgment arguing Plaintiff merely disagrees with the medical treatment provided and, thus, fails to present any facts establishing his constitutional rights were violated.  Defendant Dr. Jere Sutton filed the other pending motion for summary judgment contending that Plaintiff failed to exhaust his administrative remedies, that Plaintiff's claims are barred by the statute of limitations, and that Plaintiff fails to present facts demonstrating that the alleged constitutional deprivation is "sufficiently serious" or that Dr. Sutton knowingly disregarded an excessive risk to Plaintiff's health.  Dr. Sutton asks to join in the CCCF Defendants' arguments made in their summary judgment motion; therefore, the Court will consider all arguments raised here.

III.    **Legal Standards**

        A.    <u>Fed. R. Civ. P. 56</u>

Summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).   The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   However, the non-moving party has the burden of showing that there are issues of material fact to be determined.  *Id.* at 324.

That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial.  Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002).  These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'"  *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324).   "[T]he content of summary judgment evidence must be

generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of

Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based

on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The

court views the record and draws all inferences in the light most favorable to the non-moving party."

*Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

      B.    <u>Treatment of a Pro Se Litigant's Pleadings</u>

While a federal court must construe a *pro se* litigant's "pleadings liberally, applying a less

stringent standard than is applicable to pleadings filed by lawyers" (*Whitney v. New Mexico*, 113

F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted)), it is not "the proper

function of the district court to assume the role of advocate for the pro se litigant." *Hall v. Bellmon*,

935 F.2d 1106, 1110 (10th Cir. 1991); *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir.

1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

**IV.    Analysis**

For his motion, Defendant Dr. Sutton argues that Plaintiff failed to exhaust his available

administrative remedies, that certain of Plaintiff's claims are barred by the statute of limitations, and

that Plaintiff fails to demonstrate genuine issues of fact as to whether Dr. Sutton violated Plaintiff's

Eighth Amendment rights.  The CCCF Defendants likewise argue that Plaintiff fails to show any

issues of fact as to whether any of the Defendants committed an Eighth Amendment violation.  The

Court will analyze each argument in turn.

      A.    <u>Exhaustion of Administrative Remedies</u>

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust any available

administrative remedies before challenging prison conditions in federal court.  Prison Litigation

Reform Act, 42 U.S.C. § 1997e(a) (1996).  At one time, exhaustion was left to the discretion of the district court; however, it has since become mandatory.  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards."  *Id.*  "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."  *Jones v. Bock*, 549 U.S. 199, 204 (2007).  The purpose of proper exhaustion is to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.  *Id.* (quoting *Woodford*, 548 U.S. at 94-95).  When a prisoner properly exhausts administrative remedies for some claims, but not for others, the court should not dismiss the entire case; rather, it may dismiss those claims that have not been properly exhausted, while proceeding with the properly exhausted claims.  *Jones*, 549 U.S. at 223-24.

Defendant Dr. Sutton argues that Plaintiff has failed to exhaust his available administrative remedies for the claims asserted in his Amended Complaint.  The Supreme Court has held that failure to exhaust all administrative remedies is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.  *Id.* at 216.  While "exhaustion need not be pled in the complaint, [it] must be alleged in the answer."  *Allen v. Zavares*, 568 F.3d 1197, 1200 (10th Cir. 2009).

First, the Court notes that the CCCF Defendants assert in their reply brief that they stand on an argument made in their motion concerning failure to exhaust; however, the CCCF Defendants do not raise the exhaustion defense either in their motion or in their answer to the Amended Complaint.[3]  *See* Motion, docket #94, and Answer, docket #48.  Therefore, the Court will not

---

[3]The CCCF Defendants' Answer pleads the affirmative defense set forth in 42 U.S.C. § 1997e(e) concerning the limitation of recovery for mental or emotional injuries (Answer, ¶9, docket

consider the defense with respect to the CCCF Defendants.  *See* Fed. R. Civ. P. 8(c) and 12(h)(2).

All that is required of a plaintiff inmate to properly exhaust administrative remedies is compliance with the prison's grievance procedures.  *Jones*, 549 U.S. at 218.  The CDOC maintains a written grievance procedure that includes three levels of appeal for its inmates.  A.R. 850-04.[4] After the three levels of appeal have been properly exhausted, the grievance officer is responsible for notifying the "offender" that he or she has exhausted his or her administrative remedies.  *Id.* (IV)(G)(1)(c)(1).  Once the offender has exhausted all administrative remedies, he or she may then file a lawsuit in federal court.  *Jones*, 549 U.S. at 218.

Here, citing a letter from Grievance Officer Anthony DeCesaro, Dr. Sutton contends the Plaintiff "was specifically informed that he had failed to exhaust the administrative remedies available to him."  Motion, docket #93 at 8.  The letter, by itself, fails to demonstrate the Plaintiff failed to exhaust remedies in this case; the letter merely refers to Grievance #C-CC09/100-284, which the Plaintiff purportedly filed "with regard to medical."  August 12, 2010 Letter, docket #93-24.  There is no indication, and Dr. Sutton provides no information demonstrating, whether the grievance referred to in the letter is the same grievance filed by the Plaintiff supporting the claims made in this action.

However, in responding to the defense in his response to the present motion, Plaintiff points to his Amended Complaint, in which he responds to the question "[d]id you exhaust available administrative remedies?" as " yes," but then notes that "[t]his subject matter is a part of [the] claim that will gather debate. Plaintiff has attempted, in good faith, to follow the administrative protocols,

#48), but does not plead the affirmative defense of failure to exhaust administrative remedies set forth in 42 U.S.C. § 1997e(a).

[4]The complete regulation is available on the CDOC's website, www.doc.state.co.us.

and it has become painfully obvious that he is in the only one who is subject to do so."  Amended

Complaint, docket #37 at 7.   Further, on May 9, 2011, the Plaintiff drafted a letter to Warden

Smelser expressing his belief that he had not received adequate medical care and requesting "that

the medical grievances, previously submitted, be given appropriate redress as seems practical to

attain a meaningful remedy.  In the event that this is deemed impractical, then presumably a

reasonable alternative would be that CCCF, or CCA, or DOC would reinstate the previous denial(s)

of inmate Nival's #135714 grievance(s) and thereby allow an Exhaustion of Administrative

Procedure."  May 9, 2011 Letter from Plaintiff to Warden Smelser, docket #107-1 at 4(emphasis in

original).  Finally, in his deposition, the Plaintiff testified as follows:

> **Q** So, do you agree that you filed this lawsuit after being told that you had failed to exhaust your administrative remedies?
> **A** Excuse me?
> **Q** You filed a lawsuit against Dr. Sutton and the other Defendants in this action?
> **A** Yes.
> **Q** After being told that you had not exhausted your administrative remedies, correct?
> **A** Yes.
> **Q** And, after being told, you still did not take steps to exhaust your administrative remedies, is that correct?
> **A** Yes.

Nival depo. at 101: 7-20.

Plaintiff asserts in his response brief that he "has made every effort at his disposal to [ ]gain

a meaningful remedy from prison officials and the medical professionals at CCCF. Plaintiff plainly

distributed a document in an ultimate attempt to request that prison officials provide Plaintiff with

a meaningful remedy, no response was ever received and Plaintiff therewith had no alternative but

to move this Court for the relief sought."  Plaintiff cites to no evidence supporting his statement;

however, to the extent that the Plaintiff, when he refers to the "document," means the May 9, 2011

letter to Warden Smelser, the Plaintiff fails to demonstrate how such letter complies with the

prison's grievance process to which he is required to adhere.  *See Jones*, 549 U.S. at 218.

A prisoner does not exhaust his administrative remedies when he fails to properly complete the grievance process or correct deficiencies in his grievances before filing a lawsuit.  *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).  "An inmate who begins the grievance process but does not complete it is barred from pursuing a Section 1983 claim under the PLRA for failure to exhaust his administrative remedies."  *Id.*  Here, the Plaintiff admits he did not complete the administrative process before filing the lawsuit, but does not argue he is entitled to any equitable considerations.  *See, e.g., Braxton v. Zavares*, 614 F.3d 1156, 1160 (10th Cir. 2010).  Therefore, considering the Plaintiff's testimony, his letter to Warden Smelser requesting exhaustion of administrative remedies (drafted approximately nine months after receipt of Anthony DeCesaro's letter), and his lack of evidence supporting his argument in response to the present motion, the Court concludes that Plaintiff has failed to demonstrate any material fact as to whether he properly exhausted his claims against Dr. Sutton.  This Court recommends that Dr. Sutton's motion for summary judgment be granted.[5]

B.      Eighth Amendment Claims

The CCCF Defendants argue that Plaintiff fails to present facts establishing a violation of a constitutional right stating, "[t]he facts as presented establish that Plaintiff merely disagrees with the decisions regarding treatment provided and, based on that disagreement, believes his rights were violated."  Motion, docket #94 at 2.

The Court's findings of fact reveal that the Plaintiff appeared to be participating and cooperating in the medical treatment he received for his feet from July 2008 through February 2009,

---

[5]Because the Court concludes that summary judgment is proper as to Plaintiff's failure to exhaust his claims against Dr. Sutton, the Court need not address Dr. Sutton's alternative arguments.

including Naprosyn, icing and stretching the affected areas, and cortisone injections, from which he experienced pain relief.  However, on February 10, 2009, Plaintiff requested a second cortisone shot in his left foot, but Dr. Sutton denied his request saying the injection was not "medically indicated." Plaintiff testified that he believed he should have received "a remedy of some sort" from Dr. Sutton at that time.

The Plaintiff next saw Dr. Sutton on June 16, 2009, and complained of pain in his right hip and both feet.  Noting a loss of longitudinal arch in the feet, Dr. Sutton entered an order for the Plaintiff to be seen by Abilities Unlimited, a provider of medical equipment outside of the prison system, so that Plaintiff could be provided with "lower extremity orthoses." However, Physician Health Partners denied Dr. Sutton's request to obtain medical devices for the Plaintiff.  The Plaintiff agrees that the nurses have no authority to order outside consultations, and Dr. Sutton did request an outside consultation for orthopedic footwear, which was denied by others.

Dr. Sutton saw the Plaintiff again on July 28, 2009, at which time they discussed the denial of Dr. Sutton's request for Plaintiff's fitting of custom orthotics. During that visit, Dr. Sutton offered to provide the Plaintiff with an injection to address the foot pain.  Plaintiff apparently identified the location of the pain in his foot where the injection should occur, but then pointed to another location. Dr. Sutton asked for clarification that the second location was actually where Plaintiff wanted the injection.  However, the Plaintiff told Dr. Sutton that he did not trust him and did not want an injection after all.

On December 15, 2009, the Plaintiff saw Defendant NP Thompson for continued foot pain. NP Thompson ordered a course of Neurontin to address the Plaintiff's foot pain.  However, a month later, on January 12, 2010, NP Thompson noted regarding Plaintiff, "Discuss [with] IM [inmate] that

he will need to start taking Neurontin or it will be [discontinued] in 30 days." Three days later, Nurse Vasquez reported that Plaintiff told her he had not started taking the Neurontin, but agreed to start taking it.

The Plaintiff does not dispute these facts. Rather, he argues that the Defendants' collective lack of proper medical treatment for his feet has caused his constitutional injury. However, the Plaintiff does not identify the medical treatment he should have received. Instead, he claims that he should have been referred to a podiatrist who could provide him a proper diagnosis, which would then lead to the proper treatment.

In analyzing the CCCF Defendants' motion, the Court must first address the Plaintiff's burden to raise genuine issues of material fact as to whether the CCCF Defendants personally participated in causing his alleged injury. Second, for any Defendant who may have personally participated, the Court must determine whether issues of fact exist demonstrating that Defendant's conduct in allegedly denying or delaying treatment constitutes deliberate indifference in violation of Plaintiff's Eighth Amendment right.

1.    *Personal Participation*[6]

Personal participation is an essential allegation in a civil rights action. *See Bennett v. Passic,* 545 F.2d 1260, 1262-63 (10th Cir. 1976). To establish personal participation, a plaintiff must show that each defendant caused the deprivation of a federal right. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). With respect to supervisory officials, a defendant

_____

[6]The Court construes the CCCF Defendants' Affirmative Defense #5 as properly pleading the affirmative defense of lack of personal participation. *See* Answer, docket #48.

may not be held liable for the unconstitutional conduct of his or her subordinates on a theory of *respondeat superior*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Furthermore, when a plaintiff sues an official under Section 1983 for conduct "arising from his or her superintendent responsibilities," the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well. *See Dodds v. Richardson,* 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677).   Therefore, to succeed in a Section 1983 suit against a government official for conduct that arises out of his or her supervisory responsibilities, a plaintiff must allege and demonstrate that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* at 1199.

Here, the Plaintiff testified that he does not assign blame to any individual Defendant, but claims generally that the Defendants, collectively, participated in causing his injury.   This is insufficient under Section 1983.   *See Bridges v. Lane*, 351 F. App'x 284, 287 (10th Cir. 2009) (unpublished) (in Section 1983 claims "it is particularly important ... that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her."); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of [ ] the collective term 'Defendants' ... with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts that are alleged to have committed.").

The CCCF Defendants include Judy Brezendine, Lynn Thompson, Sandy Vasquez (Jane Doe

#1 "Sandy"), Mary Cardanes (Jane Doe #2 "Mary"), and Christi Rusher (Jane Doe #3 "Christie). The Court notes that none of the evidence provided lists Brezendine,[7] Cardanes or Rusher[8] as having been involved in the medical treatment of Plaintiff's feet through the relevant time period. Moreover, Plaintiff testified that Brezendine did not personally treat him for his foot condition, and that Cardanes may not be a properly named Defendant. Therefore, the Court finds that the Plaintiff has failed to establish any issues of fact concerning the personal participation of Brezendine, Cardanes or Rusher in the alleged constitutional injury.

With respect to Vasquez,[9] there is no mention of her until January 2010, when Plaintiff complained to her that he wanted to see a podiatrist. However, the Plaintiff also testified that he understood the nursing staff did not have the authority to order or refer outside consultations and were not directly responsible for outside consultations or other consultations. Therefore, the Plaintiff has failed to establish an issue of fact as to whether Vasquez personally participated in his alleged injury.

---

[7]The CCCF Defendants mention in their motion that Plaintiff "testified he is aware Defendant Brezendine recommended, but did not have the power to order, special medical shoes or an outside consultation about his feet." Motion, docket #94 at 9. However, there is no indication in the testimony or in the attached documents that Brezendine actually made any recommendations concerning Plaintiff's medical treatment. Even if she had, however, such recommendation for the relief he seeks here could not have contributed to Plaintiff's injury.

[8]Although the Plaintiff testifies that Nurse Rusher treated him after Nurse Vasquez "left," he does not identify what she did or did not do to cause his injury.

[9]The Court notes the possibility that Defendant Sandy Vasquez is also "Nurse Sandra Johnson" referred to in the facts as having treated Plaintiff from the commencement of his foot complaints. The Plaintiff testified that Nurse Vasquez treated him "when he first began complaining of foot pain." Nival depo at 124: 1-17. Even if they are the same person, the Court finds that Plaintiff fails to establish facts demonstrating Vasquez personally participated in his constitutional injury. The Plaintiff does not identify what Vasquez did or did not do to cause his injury, and there is no indication that Vasquez denied or delayed any treatment; in fact, the treatment she provided actually helped the Plaintiff with his foot pain.

Finally, the facts reveal that Plaintiff was treated by Thompson, a nurse practitioner, for his foot pain in late 2009 and early 2010. The Court will proceed to determine whether the Plaintiff establishes issues of fact demonstrating the medical treatment provided by Thompson (or lack thereof) constitutes deliberate indifference in violation of the Eighth Amendment.

### 2.    *Deliberate Indifference*

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Estelle*, 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for Eighth Amendment deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006), *overruled in part on other grounds as recognized in Robbins*, 519 F.3d at 1246-47). "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). The subjective component is met

if the plaintiff demonstrates that a defendant "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)).

Although the facts demonstrate Plaintiff's condition was alleviated at certain times under certain treatment, pursuant to *Sealock*, it is likely that the Plaintiff's foot condition would be considered "sufficiently serious" to implicate the Eighth Amendment, since it is a medical need "that has been diagnosed by a physician as mandating treatment." Therefore, for purposes of this analysis, the Court will assume the Plaintiff has established the first prong in determining deliberate indifference.

However, the Plaintiff has failed to establish issues of fact demonstrating that Thompson "knew [s]he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." In fact, in an effort to alleviate the Plaintiff's foot pain, Thompson prescribed a course of Neurontin. The facts reveal that a month or so later, the Plaintiff still had not started taking the medication.

To the extent that Plaintiff believes Thompson should have done something differently, the Plaintiff's disagreement with this medical treatment is insufficient to succeed on his Eighth Amendment claim. As the Tenth Circuit established in *Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993), a difference of opinion between a prisoner and prison medical staff regarding the treatment or diagnosis of a medical condition does not constitute deliberate indifference. "So long as a medical professional provides a level of care consistent with the symptoms presented by the

inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met." *Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006).

In *Self*, the Tenth Circuit held that the "subjective component [of an Eighth Amendment claim] is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his medical judgment." *Id.* at 1232. "[D]ecisions as to whether to consult a specialist or undertake additional medical testing" have traditionally fallen into this category. *Id.* Unless the need for additional medical treatment or a referral is obvious, a defendant's failure to provide these services is not actionable. *Id.* "Obviousness" may arise in cases where (1) a medical professional is aware of his inability to provide adequate treatment but delays or refuses to provide a referral; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize it; or (3) a medical professional completely denies care despite recognizable symptoms which potentially create a medical emergency. *Id.*

The Plaintiff argues that Defendants' medical treatment has been inadequate, and that they should have referred (or should now refer) him to a podiatrist for "proper" treatment. As noted above, however, decisions of this nature traditionally fall within the scope of a physician's medical judgment and are, therefore, not actionable under the Eighth Amendment absent a showing of obviousness. *See Self*, 439 F.3d at 1232. Here, the Plaintiff has not demonstrated that Thompson was unable to treat his condition or that Thompson "completely denied him care" in the face of emergency-like symptoms. Plaintiff has also fails to demonstrate that his actual medical condition is so obvious that even a lay person could have recognized it. To the contrary, the facts reveal that several medical professionals have visually examined Plaintiff's foot, taken x-rays, and apparently determined that a podiatrist is not necessary.

23

The Plaintiff also appears to argue that the Defendants' delay in providing adequate treatment or a referral to a specialist has caused his pain to worsen.  While an Eighth Amendment violation can occur where medical care is unnecessarily delayed, *Sealock*, 218 F.3d at 1210, the plaintiff must show that the "delay resulted in substantial harm", *id.*, and resulted in "the unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104.  Thus, a delay in treatment that is unintentional, or even negligent, however serious the harm, does not violate the Constitution.  *See id.* at 104-05 (deliberate indifference "is manifested ... by prison guards in intentionally denying or delaying access to medical care"); *see also Hood v. Prisoner Health Servs., Inc.*, 180 F. App'x 21, 25 (10th Cir. 2006) ("inadvertent or negligent failure to provide medical care, however serious the consequences does not rise to deliberate indifference to serious medical needs."); *Fitzgerald v.. Corrs. Corp. of Am.,* 403 F.3d 1134, 1143 (10th Cir. 2005) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") (quoting *Estelle*, 429 U.S. at 106).

Here, the Plaintiff has not demonstrated any facts showing that Thompson's treatment was or has been delayed, or that any such delay resulted in substantial harm.  In fact, the Plaintiff admits that he himself did not participate in treatment meant to alleviate his pain, including losing weight and taking the medication, Neurontin.  Again, the Plaintiff merely disagrees with the prison medical staff that he does not require a referral to a podiatrist for proper treatment.  With nothing more than Plaintiff's subjective expression of pain and "worsening" symptoms, the Court concludes that Plaintiff has failed to demonstrate a genuine issue of fact showing that Thompson demonstrated deliberate indifference to his foot condition.

Accordingly, the Court recommends that the District Court grant the CCCF Defendants'

summary judgment motion with respect to the Plaintiff's Eighth Amendment claims against them.

C.      Fourteenth Amendment Claims

The CCCF Defendants argue that the Plaintiff cannot state a separate Fourteenth Amendment claim in addition to his Eighth Amendment claim.

The Plaintiff fails to respond to this argument.  Further, in his Amended Complaint, the Plaintiff titles his claims against the CCCF Defendants as "Eighth and Fourteenth Amendment Violations" but only actually asserts a Fourteenth Amendment violation against Defendant Brezendine.  Even then, however, the Plaintiff fails to articulate any basis for his Fourteenth Amendment claim against Brezendine.  Although the Court must construe a *pro se* plaintiff's pleadings liberally, it is not the proper function of this Court to fashion a Fourteenth Amendment claim on the Plaintiff's behalf.

Accordingly, the Court finds that, in this context, the due process clause of the Fourteenth Amendment would provide the Plaintiff no greater protection than the Eighth Amendment, under which Plaintiff's claims clearly arise.  *See Whitley v. Albers*, 475 U.S. 312, 327 (1986) (the Eighth Amendment, rather than the Fourteenth Amendment, serves as the primary source of substantive protection to convicted prisoners in cases challenging prison conditions); *see also Adkins v. Rodriguez*, 59 F.3d 1034, 1037 (10th Cir. 1995) (where plaintiff generally invoked the First, Third, Fourth, Fifth, Ninth and Fourteenth Amendments, her claim "remains bounded by the Eighth Amendment, the 'explicit textual source of constitutional protection' ... in the prison context."). Thus, the Court recommends that the District Court grant the CCCF Defendant's motion for summary judgment with respect to the Fourteenth Amendment claims against them.

**V.      Conclusion**

25

Based on the foregoing, and the entire record herein, I do respectfully RECOMMEND that Defendant Jere Sutton's Motion for Summary Judgment [filed August 17, 2012; docket #93] and the CCCF Defendants' Motion for Summary Judgment [filed August 17, 2012; docket #94] be **GRANTED** as set forth herein.

Dated at Denver, Colorado, this 7th day of November, 2012.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge